# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **ROBIN MCALLISTER,**<br><br>    Plaintiff,<br><br>    v.<br><br>**DISTRICT OF COLUMBIA,**<br><br>    Defendant. | Case No. 1:12-cv-01002 (CRC) |

## MEMORANDUM OPINION

Plaintiff Robin McAllister claims that the District of Columbia Public Schools ("DCPS") denied her son, J.R., a free and appropriate public education ("FAPE") in violation of federal law when it changed his special education placement from a private academy to his neighborhood public high school. Following an administrative hearing at which the parties presented conflicting and, in the hearing officer's opinion, unconvincing testimony as to whether the public school could meet J.R.'s educational needs, the hearing officer dismissed McAllister's administrative complaint. Following the parties' cross-motions for summary judgment on McAllister's complaint to this Court, Magistrate Judge John M. Facciola issued a recommendation to deny McAllister's motion and to grant the District's. Finding no quarrel with how the hearing officer weighed the conflicting testimony and no reason to upset her credibility determinations, the Court adopts the magistrate judge's recommendation.

  **I. Background**

Robin McAllister brings this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., claiming that the DCPS denied her son, J.R., a free and appropriate public education ("FAPE") as required under the Act. Compl. ¶ 1. A March 2010 Individualized Education Program ("IEP") recommendation determined that J.R. required a "full

time therapeutic educational setting," and for the 2010–2011 school year J.R. attended Rock Creek Academy, a private special-education school. Administrative Record (AR) at 5, 35. In March 2011, however, after Rock Creek informed DCPS that it would seek an alternative placement for J.R. "due to ongoing, serious concerns with safety, security, and stabilization," DCPS notified McAllister that it would transfer J.R. to Spingarn Senior High School, J.R.'s neighborhood public school. Id. at 51–52. Dissatisfied with the new placement, McAllister declined to enroll J.R. at Spingarn, and he did not attend school at all during the first half of the 2011–2012 school year. Id. at 5. J.R. was then incarcerated in a D.C. youth detention facility for a period of 46 days, from December 26, 2011 to February 9, 2012. Id. at 260. Following his release, McAllister enrolled J.R. in another private school, Accotink Academy, which she claims provided J.R. a therapeutic environment in conformity with his IEP. Compl. ¶¶ 18–20.

McAllister challenged J.R.'s placement at Spingarn in a due process complaint against DCPS. At the administrative hearing, McAllister testified that she objected to sending J.R. to Spingarn because she thought it was unsafe and because her niece's IEP has not been implemented by the school, id. at 207–208, yet she admitted on cross-examination that she did not attempt to determine if the school would implement J.R.'s IEP. Id. at 210–11. McAllister added that J.R.'s IEP had not been implemented while he was incarcerated. Id. at 206.

McAllister also offered testimony from Sharon Millis, a special education advocate and expert, who testified that she had visited Spingarn "many times and . . . knew that there was not a program that could meet [J.R.'s] IEP." Id. at 147. Millis further stated that she spoke with Dr. Patricia Ohuoha, Spingarn's special education coordinator, who told her that Spingarn did not have a full time therapeutic placement. Id. at 148, 150. Counsel for DCPS did not object to Millis's testimony.

2

DCPS called just one witness at the hearing: Nicole Garcia, a special education coordinator for the school system who had proposed J.R.'s placement at Spingarn. Id. at 234–35. Garcia testified that she too spoke with Dr. Ohuoha but that—contrary to Millis's testimony—Ohuoha told her that Spingarn *could* implement J.R.'s IEP. Id. at 247. McAllister's counsel objected to this testimony as hearsay. Id. at 242. While correctly noting that "rules of evidence are loosely construed an administrative due process hearing," the hearing officer allowed the testimony to the extent it was being "presented to show the basis for the witness' actions"—i.e., Garcia's placement of J.R. at Spingarn—but not to prove "the veracity of Dr. Ohuoha's statements." Id. at 245–46. Neither side chose to call Dr. Ohuoha.

In her written determination, the hearing officer ruled that McAllister failed to prove that Spingarn was not an appropriate placement. Id. at 13–14. The hearing officer concluded that McAllister's own testimony—that Spingarn was dangerous and did not implement her niece's IEP—was insufficient to support a finding that the school could not satisfy J.R.'s IEP. Id. at 9. Moving to Millis and Garcia, the hearing officer found neither witness credible, calling their testimony "self contradictory," "twisted," and "not totally candid." Id. at 7. The hearing officer explained that she had not considered either witness' testimony for the truth of "Dr. Ohouha's view of the program at Spingarn" and that, because neither party chose to call Dr. Ohouha herself, "neither side presented me with evidence that substantiates [its] position regarding the proposed placement at Spingarn." Id. at 8. The hearing officer thus dismissed McAllister's due process complaint.

In her complaint to this Court, McAllister seeks: (1) a declaratory judgment that DCPS has denied J.R. a FAPE since the date of the Spingarn placement, including the period of his incarceration in 2011–2012; (2) compensation for the costs of enrolling J.R. in Accotink; (3) an order that DCPS fund J.R.'s continued education there; and (4) attorney's fees and costs. Compl. at

3

4. Following the Court's referral of the case to Magistrate Judge John M. Facciola for pre-trial management, the parties filed cross-motions for summary judgment. Magistrate Judge Facciola concluded that "the [hearing officer's] handling of the matter was perfectly consistent with the law and logic." Report & Recommendation at 11. On the adequacy of the Spingarn placement, he observed that the conflicting testimony of Millis and Garcia "cancelled each other out" and left the hearing officer with only the "untested opinion" of McAllister. Id. at 10–11. He further found that J.R. was not entitled to compensatory education because McAllister failed to prove that Spingarn was an inappropriate placement and that McAllister had waived any claims regarding J.R.'s education while incarcerated by failing to raise them in her due process complaint. Id. at 7–10. The magistrate judge thus recommended denying McAllister's summary judgment motion and granting summary judgment in favor of the District. McAllister filed timely objections to the Report and Recommendation, which the Court reviews *de novo*. See Fed. R. Civ. P. 72.

## II.     Standard of Review

Summary judgment is appropriate if the pleadings, discovery materials, and admissions on file, together with any affidavits or declarations, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are only those that may affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court draws all reasonable inferences in the non-movant's favor and accepts as true all competent evidence of the non-movant. Id. at 255.

In reviewing the findings and decision of an administrative hearing officer in an IDEA case, the Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Where,

as here, neither party requests that the Court consider additional evidence, "'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" Savoy v. Dist. of Columbia, 844 F. Supp. 2d 23, 30 (D.D.C. 2012) (quoting Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997)). The hearing officer's findings are owed "'less deference than is conventional' in administrative proceedings." Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)). But the Court should "defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." Savoy, 844 F. Supp. 2d at 30 (quoting S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)).

**III.    Analysis**

   A. Millis's Testimony

The primary issue before the Court is the hearing officer's treatment of the testimony of McAllister's special education advocate, Sharon Millis, and DCPS's special education coordinator, Nicole Garcia. McAllister argues that the hearing officer erroneously excluded Millis's testimony at the conclusion of the hearing and that Garcia's testimony was never admitted into evidence. Pls.' Obj. to Report & Recommendation at 5–9. Thus, she contends, "Millis' testimony stands as the only record evidence of Spingarn's ability to provide the environment prescribed in J.R.'s IEP." Id.[1] The Court takes a different view of the hearing officer's handling of this testimony.

In IDEA cases, the hearing officer "like the trier of fact in judicial proceedings, must weigh and interpret the evidence and ultimately make a finding[.]" Roark ex rel. Roark v. Dist. of Columbia, 460 F. Supp. 2d 32, 40 (D.D.C. 2006). A hearing officer's findings "based on credibility

---

[1] McAllister does not object to Magistrate Judge Facciola's recommended finding that DCPS must provide J.R. with a compensatory education only if McAllister proves that Spingarn was inadequate. See Report & Recommendation at 9.

5

determinations of live witness testimony" are given "particular deference" where there is no supplementation of the record. R.D. ex rel. Kareem v. Dist. of Columbia, 374 F. Supp. 2d 84, 89–90 (D.D.C. 2005) (citing Shore Reg'l High Sch. Bd. Of Educ. v. P.S., 381 F.3d 194, 199 (9th Cir. 2001)). "[U]nless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion,'" the Court "must accept the state agency's credibility determinations." J.N. v. Dist. of Columbia, 677 F. Supp. 2d 314, 322 (D.D.C. 2010) (quoting Shore Reg'l High Sch. Bd. Of Educ., 381 F.3d at 199); accord A.G. v. Dist. of Columbia, 794 F. Supp. 2d 133, 141 (D.D.C. 2011) ("greater level of deference is often appropriate" for "fact based, credibility-dependent finding[s]" of hearing officer); Richardson v. Dist. of Columbia, 541 F. Supp. 2d 346, 356 (D.D.C. 2008) ("judicial deference is given to the findings of Hearing Officers in the absence of facts suggesting that such deference is unwarranted" (citing A.I. v. Dist. of Columbia, 402 F.Supp.2d 152, 170–71 (D.D.C. 2005))).

At the outset, the Court does not read the record to indicate that the hearing officer excluded Millis's testimony after the conclusion of the hearing, as McAllister posits. The hearing officer never stated that she would exclude or otherwise decline to consider this testimony; in fact, she discusses Millis's testimony in some detail in the determination. See AR at 7–8. The Court also disagrees with McAllister's proposition that Garcia's testimony was never admitted into evidence. McAllister offers no citation in the record to support her contention that the testimony was not admitted and, as the District points out, the hearing officer did not sustain McAllister's objection to Garcia's testimony or strike it from the record. To the contrary, the record clearly indicates that the hearing officer admitted the testimony "as a basis for the witness' actions." AR at 245–46.

McAllister is also incorrect that the hearing officer's decision to admit Millis' testimony required her to accept it as true and find for McAllister. The hearing officer acted well within her discretion to assess Millis's testimony and to find—as she did—that it, like Garcia's, was "self

6

contradictory," "twisted," and "not totally candid." AR at 7–8 & n.6 ("Petitioner's counsel argued that I must take as true Ms. Millis' report of Dr. Ohouha's view of the program at Spingarn, but I decline to do so"). A fair reading of the determination indicates that the hearing officer's adverse credibility determination extended to Millis's personal observations of Spingarn. AR at 8, 147 (discussing Millis' account of her prior visits to Spingarn).

The District's failure to object to Millis' testimony does not alter the analysis. As the magistrate judge noted, "simply because the evidence is unrebutted and unchallenged, does not mean the finder of fact, in this case the [hearing officer], is bound to accept it as true." Report & Recommendation at 8–9, n.3 (citing Rohm & Haas Co. v. Brotech Corp., 127 F.3d 1089, 1092 (Fed. Cir. 1997)). The hearing officer was entitled to make reasonable credibility determinations and, in the absence of extrinsic evidence to the contrary, those determinations are entitled to deference from this Court. See, e.g., R.D. ex rel. Kareem v. Dist. of Columbia, 374 F. Supp. 2d 84, 89–90 (D.D.C. 2005).

McAllister also claims that, had she known that the hearing office would not consider Millis's statements about Dr. Ohuoha for their truth, she would have called Dr. Ohuoha herself to testify about Spingarn's programs. See Pl.'s Mot. for Summ. J. at 11–12. McAllister's counsel was certainly entitled to rely on the hearing officer's admission of Millis's testimony, to which the District did not object. But that reliance carried an entirely foreseeable risk: that the hearing officer, as the finder of fact, could discount as hearsay Millis's accounts of Dr. Ohuoha's statements and, in the absence of direct testimony from Dr. Ohuoha herself, find that Millis's testimony was not credible. And that is precisely what happened. Having accepted that risk and not called Dr. Ohuoha or anyone else to provide direct testimony, McAllister's counsel cannot now claim that his client was denied due process.

Ultimately, McAllister bore the burden of proving that Spingarn could not implement J.R.'s IEP. D.C. Mun. Regs. Tit. 5-E, § 3030.14 ("The burden of proof shall be the responsibility of the party seeking relief."). In the absence of direct testimony from Dr. Ohuoha, the hearing officer was entitled to reject the testimony of both sides' witnesses and find that McAllister did not carry her burden.[2] This Court will not overturn the hearing officer's finding.

### B. J.R.'s Incarceration

McAllister also argues that DCPS did not provide J.R. a FAPE while he was incarcerated for 46 days from December 2011 to February 2012. Pl.'s Mot. for Summ. J. at 9. DCPS argues in its cross-motion that she waived any claims regarding J.R.'s period of incarceration by failing to include them in her due process complaint. Def.'s Cross-Mot. for Summ. J. at 10. McAllister responds that DCPS was on notice of the claimed violations because her administrative complaint requested relief for all dates after March 25, 2011—which includes the time he was incarcerated. Pl.'s Opp. to Cross-Mot. for Summ J. at 6–7; AR at 80–82. .

"The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [administrative complaint], unless the other party agrees otherwise." Id. § 1415(f)(3)(B). Likewise, a party only "ha[s] the right to bring a civil action with respect to the [administrative] complaint presented." 20 U.S.C. § 1415(i)(2)(A); Dist. of Columbia v. Pearson, 923 F. Supp. 2d 82, 87–88 (D.D.C. 2013). Issues not raised in the administrative complaint, therefore, are deemed waived absent agreement of the parties. E.g., D.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 77–78 (2d Cir. 2014); Pearson, 923 F. Supp. 2d at 87–88. The

---

[2] McAllister also testified at the hearing, explaining that she did not want to enroll J.R. at Springarn because she felt it was unsafe and her niece's IEP was not being implemented by the school. AR at 207–208. Magistrate Judge Facciola agreed with the Hearing Officer that this testimony "did not support a finding that Spingarn was incapable of implementing J.R.'s IEP." Report & Recommendation at 9. McAllister does not object to this portion of the Report and Recommendation. See Obj. to Report & Recommendation at 7 ("Millis's testimony stands as the only record evidence of Spingarn's ability to provide the environment prescribed in J.R.'s IEP.").

Second Circuit has held that "the waiver rule is not to be mechanically applied. The key to the due process procedures is fair notice and preventing parents from 'sandbag[ging] the school district' by raising claims after the expiration of the resolution period." D.F., 746 F.3d at 78 (quoting R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 187 (2d Cir. 2012).

Magistrate Judge Facciola determined, and the Court agrees, that McAllister's due process complaint failed to put DCPS on notice of McAllister's incarceration claim. Report & Recommendation at 10. By failing to mention, for example, that J.R. was even incarcerated; the educational services, or the lack thereof, he received while incarcerated; or whether his IEP was implemented while incarcerated, DCPS had no way of anticipating and preparing defenses to this claim. See, e.g., Pearson, 923 F. Supp. 2d at 88 (complaint must explicitly raise subject areas that form basis of claims). Simply placing the allegations within a date range that includes the period of J.R.'s incarceration was not sufficient to satisfy notice pleading requirements under even the most nominal of standards.

### C. Attorney's Fees and Costs

McAllister requests attorney's fees and costs. Compl. at 4. Because the IDEA only permits an award of attorney's fees to a prevailing party, 20 U.S.C. § 1415(i)(3)(B), the Court denies this request.

**IV. Conclusion**

After consideration of the Report and Recommendation of Magistrate Judge Facciola, the parties' pleadings, the entire record before the Court, and the applicable law, the Court adopts Magistrate Judge Facciola's Report and Recommendation. The Court will issue an order consistent with this Memorandum Opinion.

Date:       May 21, 2014

CHRISTOPHER R. COOPER
United States District Judge